IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

WILLIAM DILLHUNT,

                      Plaintiff,

                                            Civil Action No.
                                            9:07-CV-0412 (GTS/DEP)

        vs.

SGT. THERIAULT, Gouverneur Correctional
Facility, *et al.,*

                      Defendants.

_____

<u>APPEARANCES</u>:                   <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>:

WILLIAM DILLHUNT, *Pro Se*
112-24 201st Street
St. Albans, NY 11412

<u>FOR DEFENDANTS</u>:

HON. ANDREW M. CUOMO      JAMES SEAMAN, ESQ.
New York State Attorney General  Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

      Plaintiff William Dillhunt, a former New York State prison inmate who

is proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.  In his amended complaint, plaintiff asserts that certain of his outgoing mail was opened unlawfully, and that prison officials at the facility in which he was incarcerated retaliated against and harassed him, violated his due process rights, and maliciously pursued disciplinary charges against him, resulting in his placement in disciplinary segregation.  Plaintiff's amended complaint seeks both monetary damages and declaratory relief.

Currently pending before the court is defendants' motion for summary judgment dismissing plaintiff's claims against them.  In their motion, defendants argue that their opening of plaintiff's mail was in furtherance of legitimate, penological concerns, and thus did not violate his constitutional rights, and that the record fails to support his claims of retaliation, harassment, malicious prosecution, and conspiracy. Defendants additionally contend that, in any event, they are shielded from suit under the doctrine of qualified immunity.  For the reasons set forth below, I recommend that defendants' motion be granted, and plaintiff's amended complaint be dismissed in its entirety.

I.    BACKGROUND[1]

---

[1]    In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and

Plaintiff is a former prison inmate who was, at the relevant times, entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS").  *See generally* Amended Complaint (Dkt. No. 6).  During most of the period relevant to his claims, plaintiff was designated to the Gouverneur Correctional Facility ("Gouverneur"), located in Gouverneur, New York.  *Id.*

While defendants point to earlier events as having precipitated the disciplinary actions taken against Dillhunt, he maintains that the circumstances forming the basis for his claims were set in motion on February 17, 2006 when he tendered a handwritten complaint, later typed and resubmitted on February 21, 2006 as a formal grievance, complaining of the actions of a corrections officer who is not a party to the action occurring on February 14, 2006.   Amended Complaint (Dkt. No. 6) ¶¶ 15-16 and Exhs. 2, 3.  Plaintiff's complaint concerned an racial slur allegedly overheard by Dillhunt and directed toward him and two other minority inmates by the corrections officer.  *See id.*  During the course of an ensuing investigation into the matter by Corrections Sergeant Perry, a

_____

ambiguities resolved in favor of the plaintiff.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).  It should be noted, however, that many if not most of plaintiff's allegations are sharply contested by defendants.

defendant in the action, plaintiff was asked by Perry, in substance,

whether he was certain that he desired to pursue the matter, and was told

by Sergeant Perry "I don't think you know what you're doing," a statement

interpreted by plaintiff as a threat of recrimination against him should he

decide to pursue the grievance.[2]   Seaman Aff. (Dkt. No. 41-2) Exh. A at

19.

On February 26, 2006, the day after Sergeant Perry interviewed

plaintiff, Dillhunt authored a letter addressed to his brother, Michael

Dillhunt, requesting that his brother send $60 to a fellow inmate for legal

services performed on his behalf by the other prisoner.  Amended

Complaint (Dkt. No. 6) ¶ 20 and Exh. 4.  Plaintiff thereafter placed the

letter, together with a separate letter from the fellow inmate, in an

envelope addressed to his brother.  Seaman Aff. (Dkt. No. 41-2), Exh. A at

36-38; *see also* Theriault Decl. (Dkt. No. 41-16) Exh. A at 1-3.  Plaintiff

mailed a second letter, addressed to his Aunt Emanuel, on or after March

---

[2]       Plaintiff's grievance regarding the corrections officer's alleged racial slur
was denied at the facility level on March 9, 2006, Seaman Aff. (Dkt. No. 41-2) Exh. 2 at
22, and that denial was upheld on appeal to the CORC on April 5, 2006.  *See*
Amended Complaint (Dkt. No. 6) Exh. 3.  It appears from the superintendent's decision
denying the grievance that plaintiff was issued a misbehavior report based upon the
events of February 14, 2006.  *See* Amended Complaint (Dkt. No. 6) Exh. 3.  Neither
plaintiff nor defendants have submitted any further information regarding the basis for,
or ultimate disposition of, that misbehavior report.

6, 2006; that communication consisted of a typewritten letter from

plaintiff's fellow inmate requesting that the recipient send $30 to the fellow

inmate for legal services performed on plaintiff's behalf.  Seaman Aff.

(Dkt. No. 41-2) Exh. A and 39-40; Amended Complaint (Dkt. No. 6) ¶ 21;

*see also* Theriault Decl. (Dkt. No. 41-16) Exh. A at 6.

The two letters were subsequently intercepted, and the three pieces

of correspondence contained within them were read by prison officials

sometime prior to March 18, 2006.  Theriault Decl. (Dkt. No. 41-16) ¶ 4

and Exh. A.  As will be seen, the basis for defendants' confiscation of

plaintiff's outgoing mail is contested.  Defendants maintain that

interception of plaintiff's outgoing mail was authorized in writing on

February 7, 2006 by Justin A. Taylor, the Superintendent at Gouverneur,

pursuant to DOCS Directive No. 4422; according to defendants, the

superintendent was asked to approve the interception of plaintiff's

incoming and outgoing mail based upon confidential information allegedly

provided to prison authorities that Dillhunt was selling drugs within the

facility.  Theriault Decl. (Dkt. No. 41-16) ¶ 2; Taylor Decl. (Dkt. No. 41-10)

¶ 6 and Exhs. B, C.  Plaintiff, on the other hand – not without some

evidentiary support – alleges that when his mail was intercepted no such

written directive had been issued.[3,4]

Following defendants' interception of the three communications at issue, defendant Theriault confronted plaintiff with copies of the letters as well as the envelopes addressed to his brother and aunt.  Amended Complaint (Dkt. No. 6) ¶¶ 23-24.  In response, plaintiff claimed that he did not remember sending the letters.  *Id.*  Exh. 6.  On March 18, 2006 defendant Theriault issued a misbehavior report accusing plaintiff of

---

[3]     Plaintiff made a number of requests pursuant to New York's Freedom of Information Law ("FOIL"), N.Y. Public Officers Law Art.  6, for copies of documents authorizing the mail watch, yielding responses indicating that no such documents existed.  Amended Complaint (Dkt.  No. 6) Exh.  9; Dillhunt Aff.  (Dkt. No. 45) Exh.  4.  In response to FOIL request made by plaintiff while at Gouverneur requesting "[a]ny written authorized to opened or read my outgoing mail," for example, Senior Counselor R. Stiles responded on May 2, 2006 that no such record exists.  Amended Complaint (Dkt. No. 6), Exh. 9.  A later memorandum, dated October 13, 2006, to plaintiff from the FOIL officer at Cape Vincent Correctional Facility (where plaintiff had been transferred) advised that plaintiff's request was denied because "releasing the document if it exists would interfere with law enforcement investigations or judicial proceedings."  Dillhunt. Aff. (Dkt. No. 45) Exh. 4.  Plaintiff apparently appealed that denial.  In April of 2007, while at Cape Vincent, plaintiff submitted another FOIL request relating to any authorization to read or open his mail, and was told again that no such record existed at that facility.  Amended Complaint (Dkt. No. 6), Exh. 9.  In what appears to be a response to the earlier appeal by plaintiff of the FOIL denials, plaintiff was advised on May 24, 2007 by Anthony J. Annucci, Esq., Deputy Commissioner and Counsel to the DOCS, that the mail watch authorization sought by the plaintiff did not exist.  Dillhunt Aff. (Dkt. No. 45) Exh. 5.  For reasons later discussed, while the New York State Supreme Court, in a decision vacating plaintiff's disciplinary penalty, obviously found the question of whether there had been compliance with DOCS Directive No. 4422 important for purposes of the disciplinary disposition under consideration, the dispute over whether such compliance occurred is not material for purposes of defendants' motion.  *See* pp. 22 - 24, *post*.

[4]     Superintendent Taylor's authorization to intercept of plaintiff's incoming and outgoing mail was terminated on April 7, 2006.  *See* Taylor Decl. (Dkt. No. 41-14) Exh. D.

soliciting services from another inmate (Disciplinary Rule 103.20), lying (Disciplinary Rule 107.20), and possessing or exchanging a document containing crime and sentence information (Disciplinary Rule 113.27). Amended Complaint (Dkt. No. 6) ¶ 25 and Exh. 6; *see also* Seaman Aff. (Dkt. No. 41-2) Exh. 1 at p. 40; Theriault Decl. (Dkt. No. 41-16) ¶¶ 6, 8 and 9.

A Tier III disciplinary hearing was convened on March 24, 2006 by Hearing Officer Nancy Martin to address the charges against Dillhunt.[5] Amended Complaint (Dkt. No. 6) ¶ 26; Seaman Aff. (Dkt. No. 41-2) Exh. 3.  In anticipation of that hearing plaintiff was assigned an individual to assist him and was provided with copies of the subject letters.  Seaman Aff. (Dkt. No. 41-2) Exh. 3 at p. 1 and Exh. 15.  At the hearing, which was continued on March 30, 2006, plaintiff appeared and was permitted the opportunity to cross-examine defendant Theriault and to offer evidence on his own behalf, including written and oral statements as well as the

---

[5]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in a Special Housing Unit ("SHU").  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

testimony of the fellow inmate in question.  *See* Seaman Aff.  (Dkt.  No. 41-2) Exh. 3 at pp. 14-17.

During the hearing plaintiff questioned whether an authorized mail watch existed at the time his mail was intercepted; the hearing officer conducted an investigation into the matter, but decided neither to confirm nor deny the existence of the mail watch, which remained in effect at the time of the hearing.  Seaman Aff. (Dkt. No. 41-2) Exh. 3 at p. 11-12. Instead, the hearing officer advised plaintiff that the mail watch bore no relevance to the issue presented at the hearing and that plaintiff could pursue any complaint regarding the mail watch through the inmate grievance process.  *Id.*

At the close of the hearing, plaintiff confirmed on the record that he did not wish to call any additional witnesses or offer any further evidence, and also that he did not wish to voice any procedural objections regarding the conduct of the hearing.  Seaman Aff. (Dkt. No. 41-2) Exh. 3 at p. 17. The hearing officer then found plaintiff not guilty of soliciting or distributing another inmate's crime and sentence information, but guilty of soliciting the services of another inmate and making false statements.  *Id.*  As a consequence of that determination plaintiff received a penalty of three

months of disciplinary confinement in the facility's SHU and a corresponding loss of recreation, packages, commissary and telephone privileges was imposed.  *Id.*  The hearing officer's determination was affirmed by Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program, on May 17, 2006.  Amended Complaint (Dkt.  No. 6) Exh. 8.

Following exhaustion of the DOCS internal review process, plaintiff commenced a state court proceeding under Article 78 of the New York Civil Practice Law and Rules ("CPLR") challenging the disciplinary determination and resulting punishment.  *See* Amended Complaint (Dkt. No. 6) Exh. 9.  Plaintiff's petition led to the issuance of a decision on March 19, 2007 by Acting Supreme Court Justice S. Peter Feldstein, vacating the disciplinary determination.  *Id.* The court's reversal was based upon the respondent's failure to adduce any evidence that the superintendent at Gouverneur had authorized the interception of plaintiff's outgoing mail.  See *id.*

On April 19, 2006, plaintiff filed an internal grievance asserting that defendants were not authorized to review his mail, but only issued a misbehavior report against him in retaliation for his complaint against a

corrections officer.   Amended Complaint (Dkt. No. 6) ¶ 11 and Exh. 1.

Upon investigation, the Inmate Grievance Review Committee ("IGRC") at

Gouverneur found no evidence of retaliation, noting that plaintiff was

already on mail watch prior to his filing of the grievance against the officer.

*Id.* That determination was ratified by the facility superintendent, and

upheld on appeal to the CORC.  *Id.*

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on April 17, 2007, Dkt. No. 1, later

amending his complaint on May 23, 2007.  Dkt. No. 6.  Named as

defendants in plaintiff's amended complaint are Robert Theriault, a

corrections sergeant at Gouverneur; corrections sergeant Perry; Nancy

Martin, a hearing officer at the prison; and the facility superintendent, now

known to be Justin Taylor.  *Id.*  Plaintiff's amended complaint alleges

violations of the First, Fourth and Fourteenth Amendments of the United

States Constitution, asserting that 1)  defendants not only unlawfully

opened plaintiff's mail and violated his rights, but also engaged in a

campaign of harassment and a conspiracy to mask their violations; 2)

defendant Perry threatened and retaliated against the plaintiff based upon

his complaints regarding the conduct of a fellow corrections worker; and 3)

defendant Martin violated his due process rights and maliciously prosecuted him during the disciplinary hearing despite her awareness that there was no prior written authorization permitting the interception of his mail.  *Id.*

Following joinder of issue and the completion of discovery, defendants moved for summary judgment dismissing plaintiff's complaint in its entirety.  Dkt. No. 41.  In their motion, defendants argue that 1) interception of an inmate's mail does not violate the First or Fourth Amendment when prison officials have reasonable cause to inspect it; 2) plaintiff's harassment claim lacks merit as a matter of law; 3) plaintiff's malicious prosecution claim against defendant Martin is legally deficient, since the mail watch was properly instituted and did not violate plaintiff's constitutional rights; 4) plaintiff failed to provide evidence that his due process rights were violated during his disciplinary hearing; 5) the evidence in the record is insufficient to prove a claim of retaliation; and 6) in any event, they are shielded from suit by the doctrine of qualified immunity.  *Id.*  On December 4, 2008 plaintiff filed papers in opposition to defendants' motion, Dkt.  No.  45, and defendants have since submitted a brief reply memorandum, Dkt. No. 46.

Defendants' motion, now ripe for determination, was referred to me

for a report and recommendation to the assigned district judge, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal

Rules of Civil Procedure.  Under that provision, the entry of summary

judgment is warranted when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of*

*Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir.

2004).  A fact is "material", for purposes of this inquiry, if it "might affect

the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at

248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d

549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in

dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A party seeking summary judgment bears the initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve

any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.

Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is

warranted only in the event of a finding that no reasonable trier of fact

could rule in favor of the non-moving party.  *See Building Trades

Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002)

(citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511

(summary judgment is appropriate only when "there can be but one

reasonable conclusion as to the verdict").

B.    Plaintiff's Failure to Properly Respond to Defendants' Motion

Before turning to the merits of plaintiff's claims, I will first address the

threshold issue of the legal significance, if any, of his failure to properly

respond to defendants' Local Rule 7.1(a)(3) Statement, comprised of

material facts as to which, they maintain, there is no genuine, triable issue,

and specifically whether that failure requires that the court deem all facts

not specifically controverted by Dillhunt to be true.

This court's rules provide that when responding to a properly filed

summary judgment motion,

14

[t]he opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs... <u>The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u>

N.D.N.Y.L.R. 7.1(a)(3) (Emphasis in original).  The seemingly compulsory tenor of this rule, mandating that facts not properly controverted be deemed admitted, is not absolute, and in this case is tempered by application of the principle that *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions as a backdrop.  *See Jemzura v. Public Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.)).; *Johnson v. Tedford*, 616 F.Supp.2d 321, 324-25 (N.D.N.Y. 2007).  It should also be noted that "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local rules."  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109, n.2 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)).

Plaintiff responded to defendants' summary judgment motion on December 4, 2008 (Dkt. No. 45), and seemingly attempted to include within his opposition a response to defendants' statement of material facts.

Although plaintiff's paragraphs do not mirror those of defendants, it is fairly evident from his motion opposition and amended complaint what facts he contests.  Based on the broad discretion afforded to the court, and in deference to his *pro se* status, I find that plaintiff's Local Rule 7.1(a)(3) response is adequate to show the existence of certain factual disputes, and therefore recommend that the facts set forth in Defendants' Local Rule 7.1(a)(3) Statement not be deemed to have been admitted by the plaintiff for purposes of the instant motion.[6]  *See Holtz*, 258 F.3d at 73; *Cruz v. Church*, No. 05-CV-1067 (GTS/DEP), 2008 WL 4891165, at *3-4 (N.D.N.Y. Nov. 10, 2008) (Suddaby, J.).

### C.   Mail Censorship

At the heart of plaintiff's claims in this action is his contention that his outgoing mail was unlawfully censored.  In their motion, defendants argue that plaintiff's constitutional rights were not abridged by the interception of his outgoing mail.

### 1.   First Amendment Protections

Despite their circumstances, sentenced inmates do not shed all of

---

[6]      Although defendants have responded to plaintiff's opposition papers, in their reply defendants do not urge the court to invoke Local Rule 7.1(a)(3) and accordingly treat defendants' undisputed facts as having been admitted by Dillhunt.

the rights guaranteed to them under the constitution when passing through the prison gates.  *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198 (1984).  Analysis of whether, and if so to what extent, such individuals enjoy the benefits of constitutional protection in many instances is dependent upon the balancing of those rights against the legitimate, penological interests of prison officials, which are often in tension with those rights.

Among the protections enjoyed by prison inmates, though not unfettered, is the right "to the free flow of incoming and outgoing mail" guaranteed by the First Amendment.  *LeBron v. Swaitek*, No. 05-CV-172, 2007 WL 3254373, at *6 (N.D.N.Y. 2007) (Sharpe, J.) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).   That right, however, gives way to the legitimate penological interests of prison officials when mail is monitored for the purpose of ensuring order in the prison by preventing illegal activities, in which case no constitutional violation has occurred. *U.S. v. Workman*, 80 F.3d 688, 699 (2d Cir. 1996), *cert. denied*, 519 U.S. 938, 117 S. Ct. 319 (1996).

Actions taken by prison administrators directed toward inmate mail are subject to the overarching consideration that a prison regulation

infringing on an inmate's constitutional rights is valid so long as the

regulation is "reasonably related to the legitimate penological interests."

*Turner v. Safely*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987).  Applying

this precept, and for reasons which are obvious, "[c]ourts have

constitutionally afforded greater protection . . . to outgoing mail than to

incoming mail."  *Davis*, 320 F.3d at 351 (citations omitted).  Nonetheless,

the Second Circuit has held that "'where good cause is shown, outgoing

mail can be read' without violating inmates' First Amendment rights."

*Workman*, 80 F.3d at 698 (quoting *Wolfish v. Levi*, 573 F.2d 118, 130 n. 27

(2d Cir. 1978)*, rev'd in part on other grounds sub nom., Bell v. Wolfish*, 441

U.S. 520, 99 S. Ct. 1861 (1979)).

Plaintiff's constitutional challenge is limited to the scrutiny of his

outgoing mail.  Explaining the rationale for the interception, in a declaration

submitted in support of defendants' motion, Sergeant Theriault states that

at some point prior to February 2, 2006 he received confidential information

that Dillhunt was selling illegal drugs at Gouverneur.  Theriault Decl. (Dkt.

No. 41-16) ¶ 2.  Plaintiff challenges the fact that a formal, written mail

intercept authorization from the superintendent at Gouverneur compliant

with DOCS Directive No.  4422 was in place when his mail was seized and

read, and has tendered evidence calling into question whether that is indeed true.  Plaintiff has provided nothing in opposition to defendants' motion, however, to refute Theriault's claim that prior to plaintiff's grievance and Sergeant Perry's veiled threat he had received confidential information regarding Dillhunt's sale of drugs at the facility.   The receipt of information regarding ongoing criminal activity, which is not disputed, provided a legitimate penological basis for intercepting plaintiff's mail and thus establishes good cause for the monitoring of plaintiff's mail.  *See Knight v. Keane*, 247 F.Supp.2d 397, 393-94 (S.D.N.Y. 2002).  Accordingly plaintiff's rights under the First Amendment were not infringed.  *See Workman*, 80 F.3d at 698 (citations omitted).

## 2.  Fourth Amendment Protections

In addition to arguing that interception of his outgoing mail violated his rights under the First Amendment, Dillhunt also alleges that a Fourth Amendment deprivation resulted from that action.

In *Hudson*, the Supreme Court held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  468 U.S. at 526, 104 S. Ct. 3194.  In concurring with the majority opinion authored by Chief Justice Burger in

*Hudson*, Justice O'Connor succinctly pronounced: "The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects . . .." *Id*. at 538, 104 S. Ct. at 3206.

Even if one were to assume that as a prison inmate plaintiff enjoyed Fourth Amendment protection from unreasonable searches and seizures of his outgoing mail, such a right would be far from absolute, and instead once again would yield to legitimate penological interests. *See Workman*, 80 F.3d 699.  It is well recognized that courts should give considerable deference "to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Rodriguez v. Ames*, 224 F. Supp. 2d 555, 564 (W.D.N.Y. 2002) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 407-08, 109 S. Ct. 1874, 1878 (1989)).  In determining whether a restriction is constitutionally permissible, the court must consider

> 1) whether there is a rational connection between the restriction and the legitimate governmental interest used to justify it; 2) whether alternative avenues of exercising the right remain open to the inmate; 3) whether accommodation of the right will have an adverse impact on guards, other inmates, and prison resources generally; and 4) whether obvious, easy alternatives to the restriction exist.

*Purnell v. Lord*, 952 F.2d 679, 683 (2d Cir. 1992) (quoting *Turner*, 482 U.S.

20

at 89-90, 107 S. Ct. at 2261-62).

It goes without saying that "[t]he investigation and prevention of ongoing illegal inmate activity constitute legitimate penological objectives." *Workman*, 80 F.3d at 699 (citing *Thornburgh*, 490 U.S. at 411-12, 109 S. Ct. at 1880) (noting that "[d]angerous outgoing correspondence" in a prison context posing a "serious threat to prison order and security" includes "plans relating to ongoing criminal activity")).  "Furthermore, 'the absence of ready alternatives is evidence of the reasonableness' of the prison's practice."  *Workman*, 80 F.3d at 699 (citations omitted).  The Second Circuit has recognized, under circumstances similar to those at bar, that there is "no easily implemented alternative practice" to a mail watch available to both accommodate the legitimate interests of prison administrators and further protect the inmate's constitutional interests.  *Id.*

Having produced undisputed evidence that the interception of plaintiff's mail was instituted because he was suspected of selling illegal drugs, defendants have established that their monitoring of his outgoing mail was reasonably related to preventing ongoing criminal activity. Accordingly, since the surveillance of plaintiff's outgoing mail was instituted upon reasonable suspicion, that search and resulting seizure would also

pass muster under the Fourth Amendment.  *Id.*

### 3.    Violation of State Law

In addition to setting forth constitutional claims, plaintiff's complaint

advances a cause of action resting upon violation of DOCS Directive No.

4422, the functional equivalent of a state agency policy, arguing that the

directive was contravened because the mail watch was not authorized in

advance in accordance with that policy.[7]   To the extent that plaintiff

attempts to state a claim under 42 U.S.C. § 1983 for the alleged violation

of that directive, such a claim fails as a matter of law.

To state a valid claim under that provision, "plaintiff must allege that

1) the challenged conduct was attributable at least in part to a person who

was acting under color of state law and 2) the conduct deprived the plaintiff

of a right guaranteed under the Constitution of the United States."  *Snider

v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citing *Dwares v. City of New York*,

985 F.2d 94, 98 (2d Cir. 1993)).  "A violation of a state law or regulation, in

and of itself, does not give rise to liability under 42 U.S.C. § 1983."

*Cusamano v. Sobek*, 604 F.Supp.2d 416, 482 (N.D.N.Y. 2009) (Suddaby,

---

[7]      DOCS Directive No. 4422 provides, in relevant part, that "[o]utgoing
correspondence shall not be opened, inspected, or read without express written
authorization from the facility Superintendent."  7 N.Y.C.R.R. § 720.3(e).

22

J.) (collecting cases).  "Furthermore, the violation of a DOCS Directive, alone, is not even a violation of a New York State Law or regulation (much less of 42 U.S.C. § 1983)."  *Cabassa v. Gummerson*, 01-CV-1039, 2008 WL 4416411, at *6 n. 24 (N.D.N.Y. Sept. 24, 2008) (Hurd, J.) (internal quotation marks and citation omitted).  This is so because the DOCS directives merely provide a system which the DOCS Commissioner has established to assist him in exercising his discretion, which he retains despite any violation of those directives.  *Id.*

Undeniably, as has been noted, the parties dispute whether defendants complied with the dictates of DOCS Directive No. 4422 in connection with the seizure of plaintiff's mail.  That dispute, however, is not material since it does not undermine Sergeant Theriault's assertion that when plaintiff's mail was intercepted, prison officials had a legitimate basis to suspect him of selling illegal drugs within the facility.  In support of his position, plaintiff relies upon the state court decision vacating the penalty imposed upon him after the disciplinary proceeding, which was based upon "the absence of any indication in the record that the Superintendent of the Gouverneur Correctional Facility had authorized the opening, inspection and/or reading of [plaintiff's] outgoing mail. . .."  Amended Complaint (Dkt.

No. 6) Exh. 9.  Even crediting that court's implicit finding that defendants

opened plaintiff's mail in violation of DOCS Directive 4422, that violation

alone is insufficient to establish a claim under §1983.  *Cabassa*, 2008 WL

4416411, at *6 n. 24; *see also Workman*, 80 F.3d at 699 (holding that

evidence should not be suppressed simply because a supervising official

failed to properly fill out the mail surveillance form); *Knight*, 247 F.Supp.2d

at 394 n.5 (when a regulation affords more protection to an inmate than the

Constitution requires, "plaintiff's First Amendment right to receive and send

mail would not have been violated by defendants' failure to obtain the

proper authorization before seizing plaintiff's letter"); *Dagnone v. Phillips*,

No. 03 Civ. 0903, 2006 U.S. Dist. LEXIS 84739, at *20 (S.D.N.Y. June 12,

2006) (Fox, M.J.) (failing to comply with prison regulations is not a violation

of federal due process rights).

  Accordingly, and for all of the foregoing reasons, I recommend that

that portion of defendants' motion seeking dismissal of plaintiff's claims

relating to confiscation of his outgoing mail be granted.

   D.  <u>Retaliation</u>

  In his complaint, Dillhunt also alleges that his constitutional rights

under the First Amendment were violated when, after he pursued a

grievance regarding a corrections officer's alleged racial slur, despite Sergeant Perry's veiled threats of recrimination, his mail was intercepted and disciplinary charges were lodged against him.  Noting the ease with which such claims can be incanted by a prison inmate, defendants seek dismissal of this cause of action as legally deficient as a matter of law.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has repeatedly cautioned, however, such claims are easily recited and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) *overruled on other grounds*, *sub. nom Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Davis*, 320 F.3d at 352.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing

25

that 1) the conduct at issue was protected; 2) the defendants took adverse

action against the plaintiff; and 3) there was a causal connection between

the protected activity and the adverse action – in other words, that the

protected conduct was a substantial or motivating factor in the prison

officials' decision to take action against the plaintiff.  *Mount Healthy City*

*Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576

(1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239

F.3d at 492.  If the plaintiff carries this burden, then to avoid liability the

defendants must show by a preponderance of the evidence that they would

have taken action against the plaintiff "even in the absence of the protected

conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.  If taken for

both proper and improper reasons, state action may be upheld if the action

would have been taken based on the proper reasons alone.  *Graham v.*

*Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

It is well recognized that the filing of a grievance is protected

conduct, and can thus satisfy the first prong of a retaliation claim.  *Graham*,

89 F.3d at 80.  Plaintiff has therefore sufficiently alleged that he engaged in

constitutionally protected conduct.  Additionally, after the filing of his

grievance plaintiff was undeniably subjected to disciplinary action, and has

therefore also established the adverse action element of his retaliation claim.  *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004).

 Plaintiff's claim falls, however, on his failure to allege any facts sufficient to show that the filing of the racial grievance against a corrections officer, who is not a named defendant in the action, was in any way related to the opening of his mail and subsequent issuance of a misbehavior report by other DOCS employees.  Plaintiff has alleged no fact which would even suggest that the officer against whom plaintiff's grievance was directed was in any way related to the mail watch, or the series of events that transpired after plaintiff's mail was opened.  To the contrary, defendants have established, without contradiction from the plaintiff, that Sergeant Theriault initiated the procedure leading to the mail watch based upon a suspicion of illegal activity, and plaintiff has produced no evidence that connects Theriault to Hill.  Moreover, the record is barren of any evidence from which a reasonable factfinder could conclude that plaintiff's racial slur grievance was a substantial or motivating factor in either the decision to institute the mail watch, or the resulting disciplinary charges.

 Even if it could be said that plaintiff's amended complaint and the evidence now before the court established a *prima facie* case of retaliation,

defendants have convincingly established that they would have taken the same action against plaintiff even absent the alleged impropriety.  As was previously noted, the undisputed facts establish that defendants possessed the requisite suspicion to implement a watch of plaintiff's mail, based upon information that he was selling illegal drugs.  The record establishes as well that the disciplinary charges and proceedings would have been pursued, notwithstanding plaintiff's grievance, since a review of plaintiff's outgoing mail revealed that Dillhunt was violating prison rules, and the resulting disciplinary sanctions were imposed based upon his admissions at the disciplinary hearing to conduct establishing his guilt for two of the three violations charged.

In view of these facts, I conclude that plaintiff has not shown a cognizable retaliation claim.

E.    Harassment

Plaintiff's complaint also generally asserts that he was harassed by defendants, although few specifics are cited.  Noting that harassment of inmates by prison officials rarely rises to a level of constitutional significance, defendants also seek dismissal of this potential cause of action.

Liberally construed, plaintiff's allegations of harassment are, at best, an attempt to state a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  His complaint, however, fails to allege any conduct that would warrant Eighth Amendment protection.  As a general matter, verbal harassment, including profanity, without any physical injury is not a cognizable claim under section 1983.  *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998).  Nor do threats amount to a constitutional violation. *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995).

In his amended complaint, plaintiff alleges nothing more than having been subjected to vague threats and, apparently, that the mail watch and disciplinary proceeding itself were harassing; he does not claim the infliction of any physical injury or pain as a result of defendants' harassing conduct.  Plaintiff has therefore failed to meet the threshold requirement for an Eighth Amendment violation of showing the "unnecessary and wanton infliction of pain" by prison officials.  *Whitley v. Albers*, 475 U.S. 312, 319, 196 S.Ct. 1078, 1084 (1986).  Consequently, I find plaintiff has failed to establish any facts that would support an Eighth Amendment violation.

F.    Due Process/Malicious Prosecution Claims

Another component of plaintiff's complaint focuses upon his contention that his right to procedural due process was violated in connection with his disciplinary hearing.  In their motion, defendants assert that plaintiff received the constitutionally mandated process that he was due during the course of the disciplinary proceedings against him.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient procedural safeguards.  *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes*, 143 F.3d at 658; *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996). In their motion defendants do not contest plaintiff's assertion that by virtue of the disciplinary proceedings against him he was deprived of a cognizable liberty interest.[8]  They do, however,

---

[8]    The Second Circuit has interpreted the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), to mean that "a prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin*, 515 U.S. at 484, 115 S. Ct. 2293). There is an argument to be made that because plaintiff was sentenced to only ninety days of disciplinary confinement, he cannot establish the deprivation of liberty interest sufficient to trigger the Fourteenth Amendment's

challenge plaintiff's contention that he was denied due process during the course of the disciplinary proceedings.

The procedural protections to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are both modest and well-established, the contours of the required protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94 S. Ct. 2963, 2978-80 (1974).  Under *Wolff*, the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  *Wolff*, 418 U.S. at 564-70, 94 S. Ct. at 2978-83.

The record establishes that plaintiff received a copy of the

---

procedural due process requirements.  *See Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000); *see also Bunting v. Nagy*, 452 F.Supp.2d 447, 456 (S.D.N.Y. 2006).  I note, however, that in his complaint plaintiff alleges that while in SHU segregation he was "subjected to the daily yelling and screaming of the two hundred prisoners housed in SHU, in a small enclosed structure", causing him to experience migraine headaches. Amended Complaint (Dkt.  No.  6) ¶ 47.  This allegation could suffice to require factfinding by the court before making a determination of whether a constitutionally cognizable liberty interest is at play.  *See Davis v.  Barrett,* ___ F.3d ___ 2009 WL 2411811(2d Cir. Aug. 7, 2009).

misbehavior report setting forth the charges against him in advance of the

hearing.  Amended Complaint (Dkt. No. 6) Exh. 6.  A disciplinary hearing

was conducted on two separate days, and was recorded.  *See generally*

Seaman Aff. (Dkt.  No.  41-2) Exh.  3.  Plaintiff was assisted in preparing

for the disciplinary hearing, and before the hearing commenced he also

received copies of the letters confiscated during the mail watch that formed

the basis for the disciplinary charges.  *Id.* at 1.  At the hearing, plaintiff was

permitted to give an oral and written statement,  question Theriault, and

offer his own evidence and witnesses.[9]  *See generally id.*  At the close of

the hearing, when asked if he had any objections to the procedure

followed, plaintiff answered that he did not.  *Id.* at 16.  In addition, after the

hearing officer made her determination on the record, plaintiff was provided

a copy of the disposition.  Seaman Aff. (Dkt. No. 41-2) Exh. 3 at p.17.

---

[9]        Plaintiff contends that he was denied due process at the disciplinary
hearing when limited by the hearing officer in his cross-examination of Sergeant
Theriault, arguing that defendant Martin would stop the tape recording and threaten to
remove Dillhunt from the hearing if he continued to ask questions relating to the
authorization to monitor his mail.  Amended Complaint (Dkt. No. 6) ¶ 28, 44.  The
hearing transcript does not support this contention.  Morever, the hearing transcript
reveals that when asked if he had any further questions of Theriault, plaintiff stated
that he did not.  Dkt. No. 41-5 at p.15.  In any event, even if plaintiff was not afforded a
full opportunity to question defendant Theriault, that witness was called by the hearing
officer, and there is no constitutional requirement that plaintiff be afforded an
opportunity for unfettered cross-examination of adverse witnesses in disciplinary
cases.  *See Wolff*, 418 U.S. at 567-68, 94 S. Ct. at 2980.

The due process clause of the Fourteenth Amendment also requires that a hearing officer's determination be supported by some evidence.[10] *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S. Ct. 2768, 2774 (1985). The hearing officer's finding of guilt on two of the charges was based upon admissions made by plaintiff during the hearing, contradicting his earlier statement to Theriault that he did not recall the letters, that he had written the letters to his brother and aunt and that he was giving Inmate Muniz money to provide him the service of purchasing goods at the commissary. The hearing officer's determination was therefore supported by some evidence, thereby meeting the minimum requirements of the Fourteenth Amendment.

The primary basis for plaintiff's due process challenge is his assertion that defendant Martin impermissibly relied upon evidence obtained through what he terms the "illegal censorship" of his outgoing mail

---

[10] The "some evidence" standard under *Hill* has been described as considerably tolerant. *See Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir. 2000). To be sure, the Fourteenth Amendment requires that at least some "reliable evidence" be contained in the record supporting the hearing officer's determination. *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir. 2004) (*quoting*, *inter alia*, *Luna v. Pico*, 356 F.3d 356, 490 (2d Cir. 2004)). Based upon the court's review of the hearing transcript, and in particular plaintiff's admissions during the hearing, I conclude that no reasonable factfinder could determine that the hearing officer's conclusion was not based upon "some evidence".

in determining his guilt.  In this regard, invoking the "fruit of the poisonous tree" doctrine, plaintiff asserts that after defendant Martin became aware that no authorization existed relating to the opening of Dillhunt's outgoing mail, she should have dismissed the misbehavior report instead of continuing to maliciously prosecute him and ultimately sentencing him to ninety days in SHU confinement.

"The fruit of the poisonous tree doctrine excludes evidence obtained from or as a consequence of lawless official acts." *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) (quoting *Costello v. United States*, 365 U.S. 265, 280, 81 S. Ct. 534, 542 (1961)).  This doctrine, which applies to evidence that is obtained during a criminal investigation, however, has no applicability to prison disciplinary hearings. *Rabb v. McMaher*, No. 94-CV-614, 1998 WL 214425, at *7 (N.D.N.Y. Apr. 24, 1998) (Pooler, J.).

It should be noted, moreover, as discussed above, that a violation of DOCS Directive No. 4422 alone does not support plaintiff's contention that the evidence obtained from the mail watch and used at the disciplinary proceeding was illegally begotten, in violation of his Fourth Amendment rights.  Indeed, addressing similar facts in the context of a criminal

proceeding, another court within this circuit expressly rejected a claim that evidence obtained in violation of violation of the DOCS Directive No. 4422 must be suppressed . *United States v. Green*, No. 92-CR-159C, 1994 WL 178139, at *5 (W.D.N.Y. Feb. 10, 1994) (Curtin, J.).   In *Green*, the defendant moved to suppress evidence obtained through a mail watch on the ground that the superintendent at the correctional facility involved had failed to include all of the required information on the authorization form necessary to institute the mail watch.  *See Green*, 1994 WL 178139, at *5. Rejecting the defendant's contention, the court found that even though the state had violated its own regulations no constitutional violation occurred to warrant suppression of the evidence.  *Id.*  In doing so, the court reasoned that prisoners do not have a legitimate expectation of privacy in the their mail and furthermore, "a prisoner's right to privacy...should 'always yield to what must be considered the paramount interest in institutional security.'" *Id.* (quoting *Hudson*, 468 U.S. at 524, 104 S. Ct. at 3201).  Because the inmate in that case failed to demonstrate that his interest in mail privacy outweighed the prison's interest in maintaining security, the court found no Fourth Amendment violation had occurred.  *Green*, 1994 WL 178139, at *6.  Similarly, in this case the violation of the DOCS Direction No. 4422, if

35

any, did not require suppression of the evidence at the Tier III hearing, and cannot support plaintiff's due process or malicious prosecution claims.

In addition to arguing that his rights were abridged by the hearing officer's receipt into evidence of the disputed correspondence, plaintiff asserts that he was subjected to malicious prosecution by defendant Martin because she conducted the disciplinary hearing against him despite awareness that the evidence against him was tainted.  Such a claim in this setting is analyzed under the Fourteenth Amendment.  *See Wolff*, 418 U.S. at 553-54, 94 S.Ct. at 2973.  Where a prisoner's period of incarceration is not impacted by disciplinary proceedings, however, that inmate has no claim for malicious prosecution under section 1983.  *Parker v. City of New York,* No. 05 Civ. 1803, 2008 WL 110904, at * 9 (S.D.N.Y. Jan. 7, 2008) (citing cases).  In this instance plaintiff, who was incarcerated at the time, received a sentence of ninety-days in SHU confinement, a penalty which was later expunged from his record, and plaintiff has not alleged that the Tier III hearing or the resulting sanctions in any way affected his period of incarceration.

In view of the foregoing, I have concluded that plaintiff has stated neither a due process violation nor a claim for malicious prosecution, and

therefore recommend that defendants' motion as to these claims be

granted.

### G.   Conspiracy

Although none of his five separately numbered causes of action is

denominated as such, when liberally construed plaintiff's allegations to the

effect that defendants engaged in a "campaign of harassment" against him,

could be viewed as an attempt on his part to assert a claim of conspiracy.

*See e.g.,* Amended Complaint (Dkt.  No.  6) ¶¶ 40, 46.  To the extent that

such a cause of action is asserted, defendants argue that it is subject to

dismissal as a matter of law.

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff

must demonstrate that a defendant "acted in a willful manner, culminating

in an agreement, understanding or meeting of the minds, that violated the

plaintiff's rights . . . secured by the Constitution or the federal courts."

*Malsh*, 901 F. Supp. at 763 (citations and internal quotation marks

omitted).   Conclusory, vague or general allegations of a conspiracy to

deprive a person of constitutional rights do not state a claim for relief under

section 1983.[11]  *Id.; see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.

---

[11]      Defendants address plaintiff's conspiracy claim as if asserted under 42
U.S.C. § 1985(3).  Plaintiff's amended complaint, however, refers only to section 1983.

1983), *cert. denied*, 464 U.S. 857, 104 S. Ct. 177 (1983).  Moreover, in

order to support a claim of conspiracy to commit a civil rights violation, a

plaintiff must establish the existence of such a deprivation; a claim of

conspiracy, standing alone, is insufficient to support a finding of liability

under section 1983.  *Britt v. Garcia*, 457 F.3d 264, 269-70 (2d Cir. 2006);

*Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir. 1993) (collecting cases);

*Malsh*, 901 F. Supp. at 763.

In addition to challenging the sufficiency of plaintiff's conspiracy

allegations, defendants argue that it is precluded by the intra-agency

conspiracy doctrine. In a doctrine rooted in the conspiracy provision of

section one of the Sherman Antitrust Act, 15 U.S.C. § 1, and which,

although developed in the context of business entities, since inception has

been expanded to apply to business corporations and public entities as

well, the intra-corporate conspiracy doctrine provides that with exceptions

not now presented, an entity cannot conspire with one or more of its

employees, acting within the scope of employment, and thus a conspiracy

claim conceptually will not lie in such circumstances.  *See, e.g., Everson v.*

*New York City Transit Auth.*, 216 F.Supp.2d 71, 75-76 (E.D.N.Y. 2002);

---

Under either provision, however, his conspiracy claim fails for the reasons set forth
below.

*Griffin-Nolan v. Providence Washington Ins. Co.*, No. 504CV1453, 2005

WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.).

In this instance plaintiff alleges that defendants conspired to illegally

open and read his mail and then attempt to cover up the violation and to

have him placed in SHU disciplinary confinement.  Preliminarily, plaintiff's

allegations of conspiracy are wholly conclusory, and plaintiff has come

forward with no evidence that would even remotely suggest the existence

of a conspiracy to violate his constitutional rights.  Moreover, plaintiff has

failed to establish a constitutional violation, a predicate to a section 1983

conspiracy claim.  Notwithstanding these fatal deficiencies, even if plaintiff

had pleaded a viable conspiracy claim, it would have been precluded by

the intra-agency conspiracy doctrine since it is asserted only against

employees of the DOCS, each acting within the scope of his or her

employment.  *Little v. City of New York,* 487 F.Supp.2d 426, 441-42

(S.D.N.Y. 2007) (citations omitted).  Accordingly, I also recommend that

defendants' motion be granted as to plaintiff's conspiracy claims.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's amended complaint alleges that defendants retaliated against him for filing a grievance, engaged in a conspiracy to intercept and monitor his mail unlawfully and to harass him, violated his due process rights during a disciplinary hearing, and maliciously pursued disciplinary charges against him.  The record, however, fails to substantiate any of these claims.  Accordingly, I recommend dismissal of plaintiff's complaint in its entirety and find it unnecessary to address defendants' additional argument that they are entitled to qualified immunity from suit.

Based upon the foregoing, it is hereby respectfully,

RECOMMENDED that defendants' motion for summary judgment (Dkt.  No.  41) be GRANTED, and that plaintiff's amended complaint be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d) and 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

40

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      August 31, 2009
            Syracuse, NY